Good morning, Your Honors. May it please the Court, Martin Stanley for the plaintiff and appellant in this case. Thank you for considering and entertaining oral argument in this case. Unfortunately, the district court below did not entertain oral argument on any of the issues in this case. And as Your Honors can see, oral argument is something that can essentially affect proceedings and is an important thing on material issues. And there are two material issues in this case. The first is whether or not there was an excuse for the late service due to counsel's illness. And I would suggest that the evidence is strong on that favor, that sickness for an attorney does not... Counsel? Pardon? Are you the lawyer? I was the lawyer. I was the lawyer that had COVID, long COVID, that resulted in an inability to perform... And you were practicing at the time? Pardon me? You were practicing during that period? Very limited, I was. You were? Yes. Okay. But I did have issues that affected... There was another lawyer? Pardon me? There was one other lawyer, not from your firm? There were two other lawyers. I was limited practice because I was having a cardiac issue, which I put into the record. The other lawyer that was working for me, because I was on the State Bar Advisory Committee for Substance Abuse, was a recovering substance abuse lawyer, an alcoholic, who actually, the Harvard Law Review editor, who unfortunately died right before the summary judgment hearing in this case due to his substance abuse and alcoholism. And so that was kind of a shocking thing that happened. So sickness... That was after your attempt to... your request to the District Court. Well, I reissued that... I asked that request in the opposition to summary judgment and mentioned that. And also, at the time, I did mention it in the original ex parte, which was simply denied with no wording on why it was denied whatsoever. So the court simply just denied the proceedings. And I would suggest that sickness of counsel, to this extent, should not equate to liability of counsel, because that's what this court is actually... or the court below is actually imposing. That counsel is now responsible, really sick, but now is responsible for negligence because of what happened. This is not quite a direct response to what you're saying, but what you're trying to do is serve Kincaid. Now, if I were to look at this case with respect to Kincaid, as distinct from the employer, so I'm not... I'm now looking directly at Kincaid. I'm not doing a Manel analysis. Correct. And I'm now asking Brady. I think I find a violation in the sense that, yes, the evidence should have been handed over. On the other hand, it appears that the defendant independently learned of it. So I don't, in the end, find an actionable Brady violation. How do you respond to that? Well, first of all, the issue... Well, first of all, the issue is on a Manel type of case, you know, the burden is completely different than suing the individual. No, no, I totally understand that. But what I'm saying is, as I look at the record here, there is no viable Brady claim, even if you got Kincaid, because of the defendant learning of the evidence, and in the event, in fact, puts one of the people on the stand. But you still have the malicious prosecution portion of the action. I'm sorry, you still have what? The malicious prosecution portion of the action, because... You have a malicious prosecution action. Well, yes, that's within the federal case against... Then bring a malicious prosecution action. It is within the title, the federal statute. It's a part of that, and it is mentioned in the complaint. But not the way you pled it. Pardon me? Not the way you pled it. I believe it's mentioned in the complaint that it was a, that there was, it was not brought as a state court action. It was brought as a federal civil rights action for violation. I understand. I understand. Pardon me? In the brief, you never mentioned malicious prosecution. I think I did in the reply, Your Honor. As a matter of fact, I did. I, on page 10, even assuming arguendo this Court finds no cognizable Brady claim, the balance of Simmons' 1983 malicious prosecution claim remains, and there's a tribal issue as to that. So I did put that in the brief at page 10 on our reply, and I explained it with regards to that issue, and I cited from the complaint where it was actually mentioned. So I would suggest that, respectfully, I know these records can get quite confusing, that that was, might have been confusion, but I think that's the correct state of the record. Why, this is a slightly different question than whether you pleaded or argued it to us. Malicious prosecution is a state law cause of action. Is it a federal cause of action under 1983? It is within the purview of the 1983 claims. I have another action where Doesn't it require showing that there was no probable cause? Of what? That there was no probable cause. It does, but because the action was dismissed I was a no probable cause. There's no probable cause because had there been this evidence that was put forth originally First of all, another problem here is that, in the record of this case, we don't have the information that, once one can figure out what the connection is between this evidence and the actual shooting. Yes, it would appear that the victims were lying about something, although even that, I'm not entirely sure that they said that they were having an altercation about an accusation that they were stealing the wallet, but whether they were actually stealing the wallet or not, I don't know how connected that is to the shooting, and you can't figure it out from anything in the record, as far as I can tell, based on the record. Let me try to simplify it based upon the record, because in my reply brief, I did try to straighten that out. First of all, Mr. Hagazi did not work in the marijuana store. He worked at a separate store called the Smoke Shop, and as a matter of fact, the officer went in there and interviewed him. I understand that. I understand that he said that he saw them stealing a wallet, but what does that have to do with the shooting, based on the record? It has to do with the fact that it's impeachment because It's impeachment, but impeachment of what? What did these people say about the shooting, and what was ultimately the defense at trial? I mean, I kind of gleaned that the defense was that he didn't have a gun at all, and that the gun went off when they were struggling or something like that, but I don't know what the victim said at trial because we don't have the trial record. The trial record is not in our record. Right. So, what happened was, is that the issue is whether or not the lying by the victims, the failure to disclose this, and the failure to disclose this by the officer constitutes impeachment evidence, and that's the issue in the case. But then what? Well, if you can impeach... Do you know a case called Tatum v. Moody? Which one? A Ninth Circuit opinion, Tatum v. Moody. I'm sorry, I probably, I'm not familiar with that. Well, I mean, that is the closest in case I happen to have written it, and it deals with how you deal with a non-disclosure problem where somebody is in jail for a long time and it turns out he was not the, there was no trial. But it sets rather high standards. It's not a Brady theory exactly, but it sets rather high standards for what you have to be able to demonstrate, which is that the evidence that was not disclosed was absolutely essential. I mean, this may be technically Brady evidence, but it's somewhat to the side of whether, what actually happened here, and as to what was charged, which had nothing to do with the theft. Well, but it's all one connection because one thing immediately led to the other. In one wallet led to Ms. Canada going and telling her boyfriend a block or two away that her wallet got stolen. He came to her aid. So it's all really connected, even though I understand. But it's not, it's not exonerating evidence. Well, impeachment evidence I believe is exonerating evidence. It can be, and it definitely, impeachment is extremely important, and undoubtedly that is exculpatory evidence. So the way exculpatory but it's not exonerating. Pardon me? It may be exculpatory but not exonerating. Do you want to address the Minnell question? Yes. So on the Minnell question, first of all, I think one of the issues is if you're found innocent after three years, does that mean you can't bring a claim? Whereas if you're found guilty after three years in appeal and somehow are lucky enough to have some case reversed, the case reversed at some point in time, then you can bring a Brady claim. That simply doesn't make logical or legal sense in regards to that. The gentleman served three years in jail. That's extreme prejudice and extreme suffering. Well, Satan dealt with that situation and it essentially said, well, this isn't, it didn't analyze it as a Brady claim. It analyzed it as a 14th Amendment due process claim and set some standards for what applies. And I don't know that we have to call it Brady. We just call it, you know, it seems fairly commonsensical and dictative sense that the police can't sit on exonerating evidence. But it has to be very strong evidence, which it is, it seems to me, is not necessarily the case here. But leave that aside. What's the Minnell claim? Well, the Minnell claim is that we have this department-wide policy that's from the chief of police authorized, authored by the chief of police, telling us this is this case that came down, the Tennyson case came down, and we're supposed to now disclose all exculpatory evidence. But nowhere in that memo and nowhere anywhere else in the record does it show that anyone ever explained to the officers this department-wide policy, what exculpatory means. But it's a failure to train claim that you're making. Pardon me? It has to be a failure to claim, to trade, because it's not, you don't have a pattern and there's nothing that is said in that document that's incorrect. You're just saying it isn't enough training. Correct. It's not enough training and it's... So the standard for a failure to train is rather high. There has to be deliberate indifference and usually that means there has to be something to be deliberately indifferent to that is a pattern of having, of wrongdoing here. Well, this claim is exactly like several cases that we cited in the reply and cited in the opening brief that the defendant, in this case, didn't even choose to mention in their second. Sorry. I'm trying to find the pages where we cited that. Wilson, Glazer, and Jackson v. The City of Cleveland. There's Gregory, there's Rabinowitz, there's Harper. So these are all cases that were decided in favor of a Monell claim, which we all realize is difficult to get to trial on. But at the same time, where you have a memo authored by the chief of police, that's a completely different situation where you have, for example, training issues. But there's nothing incorrect in that memo. Well, it does, it leaves... I mean, that's why you're not, the question isn't whether that would be a binding document for purposes of Monell. It is, but it's not evidence that the policy was wrong. At best, it's evidence. You're claiming, that's why I asked you whether what you're really claiming is a failure to train. Well, it's incomplete. It's an incomplete policy. All right, it's incomplete. So therefore, the most you can be saying is there wasn't good enough training, not that they had a policy of doing bad things. But the policy left it to the officers. It actually is a policy because it left it to each and every officer to decide what is exculpatory. Well, how can you do it otherwise? I mean, the officer does have to decide, is it exculpatory? And then, having decided, either hands it off or does not. Well... Exculpatory, that's not a foreign language. Well, of course, but how can someone say impeachment is not exculpatory? And that's what happened in this case. He never gave it to anyone. And at the time of the filing, no one knew about this. As I read the record, Kincaid was a rogue officer. He says, explicitly says, hey, don't tell anybody about this. This is private between you and me. Right. This is not failure to train. This is Kincaid who's, as I read it, deliberately disobeying. You've got a good claim against Kincaid, assuming you could prove sort of cause and effect. I mean, Kincaid's not behaving properly, but I don't think it's because he didn't understand his obligations under Tennyson. Well, of course. But that kind of brings us back to the original point, because my time is limited about the service issue, because no attorney in their right mind would not to Kincaid and have him served in this case. So this only goes to show we filed the case in state court. The case was removed. In state court, we would have had an automatic relief from the dismissal because I was ill and there was no one there. And Mr. Barrett, who was the third attorney that didn't work in my office, he was the criminal lawyer that handled the matter. It doesn't matter. He was an attorney of record in the case, responsible for it. I'm not saying he wasn't, but you could say that about every attorney in a big law firm that handles a case and is responsible for every action in the case, and then there would be... That's not true. You said that in your briefs, it's completely inapt, because he was an attorney on the case, on the papers. He was not just somebody. Of course. But if you look... So it's not at all analogous to an attorney in a firm who's not attorney of record in the case. But this guy was attorney of record. But if you look at the record carefully in the reply brief, I'm sorry, in the opposition to the ex-party is where the defendant mentioned that, and we didn't have a chance to reply or have oral argument where we could explain his limited knowledge and experience in this particular federal... Why does it matter? He was still... You undertake something for what you're... that you aren't trained to do, you're still responsible for it. Well, of course. But the court, respectfully, should have below, and perhaps this court should consider, that there are certain attorneys that have certain duties in the case. I was the trial attorney. I was the lead attorney. I was the one responsible. In my declaration I said, Mr. Dave... Mr. Martin, who was the person... How late was it by then? Pardon me? How late was it by then? Well, I think it was... About five months, roughly, give or take. Beyond what? Beyond the deadline for serving. Correct. And it was one day after the statute of limitations had expired. And it's interesting that the defendants are not representing, clearly saying now they are not representing Mr. Kincaid. And at the same time, for these purposes, they filed briefs on his behalf. They file all these actions. And, in essence, they're making an unlimited appearance on his behalf. Because why should they have standing to object? It has nothing to do with them, realistically. They have no prejudice if this thing is granted. Realistically, what's going to happen is, if there's a cause of action against Kincaid, if there's a damage judgment against Kincaid, the employer's paying. We know that. Yes. So, realistically, that's what's going to happen, and that's why they have an interest. Right. I understand that. But, realistically, why should they be allowed to respond in this case because... I'm not sure that's a realistic question. That's maybe a formal question. Yeah. You said realistically. I apologize. If we're talking real world, that's exactly what's going to happen, and they have an interest in it. Correct. Unless they decide they're not, because his actions, as Your Honor said, may have been beyond the scope of an appropriate officer. So they could potentially deny it. But the real issue is... To clarify, so even if you were given the leave to serve Mr. Kincaid, would the statute of limitations have expired by then? No. So you're saying it would have been... At the time of the ex parte, it would have been expired. Because of the six month extension due to COVID, I think September 21st, if I put it in the reply brief, was the last day we could serve or file a new action against Kincaid. And one day later was when they filed the summary judgment motion. When they met and conferred on the summary judgment issues, they did not mention anything about Kincaid hadn't been served or anything else like that. What I'm asking is that if you were to serve Kincaid now, the statute of limitations would have run. So you would need an extension not only on the service, but on the limitations part. No, because since he was already named as a defendant, the statute does not run any longer. Only the service issue would be the applicable issue. Late service would be sufficient to excuse the statute of limitations because the statute of limitations is not an issue. He was originally sued. He was originally sued. That's the statute ends right there. There's no statute of limitations issue because he was originally sued in the original complaint. But then why are you, so what is the problem? Oh, the problem is that because you hadn't served him earlier, you couldn't serve him now. You couldn't file a separate suit against him now. I see. Correct. So I don't get any tolling, no equitable tolling, no nothing. It's one day late because they waited to the last, and that by the way was the last day for them to bring a summary judgment motion. They filed it on the last day possible. I think counsel, you've exceeded your time. So I'll give you one minute for a moment. And I'd like to, I asked to reserve four, but I know I'm over, so I'll do my best. Thank you. Good morning, Your Honors. Blythe Bock on behalf of the City of Los Angeles. I will address the Kincaid issue, but I want to first emphasize that we need to remember that right now the only issue here is whether or not the city can be a viable defendant, whether or not summary judgment against the city was properly brought here. Not the only issue. The other issue is the service question. Yes, and I mean, if you would prefer I can address that first, but I wanted to first emphasize that our first issue is whether or not the summary judgment was . . . I was only correcting the fact that that's not the only issue, but go ahead. I'm sorry, what, Your Honor? You began by saying that the only issue here is the Monell issue, and that's not true. There is a . . . No, no, no. No, there's many issues. I agree with that. I'm saying the most significant issue I think is the Monell issue because the city is the defendant, and I think it's important to understand that the case law just could not be more entrenched that to sue a city you have to show a pattern, and it's not enough to show one rogue officer, as Justice Fletcher describes him. That's just simply not enough that we, if we're going to hold a city liable, we need to show that there's been a pattern of practice. Well, you also . . . you could show failure to train. Right, and failure to train, as Justice Berzon pointed out, is an extremely high standard. I think it's significant both of the . . . both sides cited to the same case, which is the Board of County Commissioners versus Brown, and that case really talks about a lot of these principles. Even the page site that Simmons cited, they talk about how in this case, they talk very clearly about how a plaintiff who has suffered a deprivation of civil rights by a municipal employee will not alone . . . you cannot permit an inference of municipal culpability that you need to show that municipal decision makers . . . you have to show the existence of a pattern of tortuous conduct by inadequately trained employees. At best, what's happened here . . . You're, I think, now conflating it. My understanding is pattern is one thing, or failure to train. If I've got an officer, just one officer, who is put on the street with no training whatsoever, and who then commits a violation, I don't think you need to show anything more than a total failure to train that officer. The case that addresses that the best is the Blankenhorn case, and they say there outright that a shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant. Evidence of a failure to train a single officer is insufficient to establish a municipality's deliberate policy. In other words, the whole point of Monell . . . I think we should think about Monell, because here, I know they've talked about that the policy is this Tennyson memo. I think Monell is very instructive, because in Monell, the policy at issue was a policy, I think it was in New York, of pregnant employees needed to use their unpaid leave before they could go on maternity leave. And the court . . . That, on its face, was a constitutional violation. That was leading to constitutional violations of the pregnant employees. Right. That was a situation in which the policy was unconstitutional. Here, the policy is only being used to demonstrate a failure to . . . I mean, we've at least asked for Jane that this is a failure to train case and nothing else. Well, what Simmons seems to be arguing is that that Tennyson memo is the policy, the department-wide policy, that would support a Monell liability. But at best, the Tennyson doesn't even say this is the full policy. He just says it's consistent with the training that I received. No, I think Tennyson helps you, because it's not at all clear that it's the only training ever provided. Sure. Of course. Right. And so, at best, what we have is that there's not a definition of exculpatory in this particular memo. But what we don't have is any evidence that, for example, the LAPD's training on Brady was wholly inadequate, and it was leading to all these officers going out and committing Brady violations. You know, what you need for Monell is that the entity is liable, that the entity did something wrong, that the entity had deliberate conduct. And we simply do not have that here. Even if you . . . this is a summary judgment, so we have to assume the truth, right, of what they're saying. And if we look at this policy, at most what we have is a policy that didn't . . . maybe didn't define exculpatory, but there's nothing on its face that's perpetuating any constitutional violations. And by the way, the only alleged constitutional violations is Kincaid, is what happened here to this particular employee. That is wholly inadequate for Monell. That's exactly what Blankenhort talks about. That you can't just have one officer that commits a violation, and then imputing that to the municipality. That would make Respondia superior. For a failure to train claim, my understanding is they have to be deliberately indifferent, which means they have to be deliberately indifferent to something, something that happened. So there has to be some events that they knew about that demonstrated that the training was inadequate. Correct. And we don't have anything here at all. And we have Kincaid talking . . . I mean, Kincaid does say, I understood that I needed to turn over all evidence to the other side. I gave all the evidence to the district attorney. I mean, everything in the record suggests that there's nothing wrong in the training, even if Kincaid himself made errors. I was disappointed to hear Justice Fletcher saying that . . . Judge Fletcher. I'm sorry, Justice Fletcher. If you're in the California Court of Appeals, it's a justice. There's an old joke. Because we're in federal court. There's no justice on the Ninth Circuit. Because we're in federal court. We're judges, yeah. All right. Yeah, there you go. But I was disappointed to hear that, because I actually have to say, when I was reading through this record, I found it difficult to even find a Brady violation to begin with, because . . . Well, your position is there's no Brady violation anyway, because there was no trial. But that's a different question. That's one of my positions. But there was no conviction. That's one of my positions. I'd love to talk about it. But I think what is significant is, and this is, again, just looking through the record again last night, is it's interesting that this is called a Brady violation. I'm looking at the record at Page . . . Do you know the Tatum v. Moody case? I actually called it up on my phone, and I was trying to read it. I mean . . . I've read the case a million times, but . . . Right. Well, it seems to me to be the most directly on point case, because it's dealing with what the obligations are, not under Brady, but under the 14th Amendment, pretrial as to exonerating evidence. Why nobody discussed the case, I can't tell you. But . . . So it doesn't directly answer the question of whether you need a conviction for Brady, but it does answer the question of whether there is some viable cause of action. But it sets out standards for that cause of action, which probably they don't meet here. So I find it confusing about why we're talking about Brady. It's not a question of Brady. It's a question about whether there is some due process cause of action here, and there could possibly be. Well, I'm talking about Brady because that seems to be the thrust of the . . . I know, but Brady's just a word. I mean, it's really a . . . It's a question of what's the if they actually have exculpatory or exonerating evidence. Right. And when I look at this, I have to say the record I found to be unclear as far as what exactly was disclosed. But one thing that's significant, and as I started to say, is that I think we should look at the record. It's at page 442. It's a letter that Simmons Counsel wrote to the prosecutor. And in the letter, he talks specifically about the witnesses Ross and Higazi. When was that, by the way? June 28, 2017. So it was before the trial. It's undisputed that Higazi was known to the defense six days . . . Well, it's only before the trial. It was right after the . . . or soon . . . relatively soon after the event, right? No, that was in 2016, so it would have been a while. Right. So I think it was about nine months. They had the information with regard to Higazi six days after the . . . So Higazi could have been a witness at the preliminary hearing, and he was not called. And when I look at Higazi's testimony that was offered in trial, I just don't see it as impeachment in the least. He talks about . . . It was impeachment in so far as the . . . I mean, the problem is we don't have the trial record, which is ridiculous. But I gather, one can infer, that the victims testify with regard to that aspect of the incident, the triggering point, and they didn't admit that they had actually stolen the wallet. So to that degree, it was impeachment. Right, but I don't think that there's . . . When I look at that preliminary hearing transcript, which is in the record . . . well, chunks of it are in the record. I do not see anything in Higazi's testimony that would have led that probable cause hearing to result in anything other than what it did, which is . . . Well, that's a different question. But whether it was impeaching of the victims, it probably was. Well, because the . . . But the argument is, because the argument from Simmons is that he spent the three years in jail because Kincaid did not disclose Higazi and Ross to the other side. So his three years in jails was because of the probable cause hearing, right? So to me, what you need to look at is, would anything have been different in that probable cause hearing, i.e., and therefore he wouldn't have spent those three years in jail, if Higazi and Ross had been turned over? And I just don't see anything in there. In the Higazi and Ross reports . . . Well, I mean, more than that, I don't understand the whole thing about it being turned over when they already had it. I mean, that's . . . I mean, whether it was turned over doesn't seem to matter very much. Right. So they . . . And they could have gone to the prosecutor on day eight. Right. If I can switch gears to a slightly more mundane topic of service. Assume there was no good cause here. Should the district court have engaged in an analysis of whether there was excusable neglect? I'm sorry. Can you rephrase that question? Sure. I mean, should the district court have analyzed whether there was excusable neglect for failing to serve and to give additional time? I don't think I saw anything from the district court. I think the district court said no good cause. But should we also analyze whether there's excusable neglect here? The district court didn't explain . . . Well, the district court didn't explain this issue. It just said no good cause, which is unfortunate. But remember, we're looking at an abusive discretion standard. So I think what we need to look at . . . What he's actually asking you is, what he didn't say is, and there's no excusable neglect either. So is that a problem? Well, the thing I want to point out about that is, and this is again something that I noticed when I was preparing for the hearing, is that for all this stuff about the council's health issues, one thing that's notable, and this is at page 1019 of the record, is that the health issues didn't come about until February 18th, according to the documentation that was submitted. This case was removed November 25th, 2020. So that means by the time the health issues came up, 90 days had already passed. So I'm not understanding how this could even be germane to the failure to serve Kincaid. But I think on an abusive discretion standard, we just look at the record and we see if there's arguably grounds for it to exclude Kincaid. I think that this is fundamentally just a case where we have an officer who did his best, who investigated the case, and potentially there's critiques of his work, but I think that under Monell, critiques of his work are just simply insufficient. You've got to show that there's some widespread pattern, some constant difficulty within the police department where this is... In terms of the service, I mean, Kincaid certainly knew about the case. He was supposed to be in the case. He was part of the defense of the case. So this isn't a situation where it would be out of the blue. Right, but I think as Judge Fletcher points out, is that the issue then would be, and I think we just need to look at the record, what would Kincaid, even if he is served as a defendant, what is the civil rights violation that he would then go to trial on? And I don't see it in that, first of all, as far as... There is a malicious prosecution element of the separate cause of action in the complaint, but there would have to be a showing of no probable cause. And I don't think that we can make that showing in the lease, because I think that the preliminary hearing transcript is a plethora of probable cause. So I don't see how they can get... Well, what do you see the connection between the robbery and the later shootings? Since we don't have the trial transcript, it's hard to see. I don't see a connection. I mean, they happened far apart. They had completely different witnesses. Well, it was the triggering event. I mean, whatever happened there was the triggering event that led to the shooting on either theory, right? Right. I mean, if anything, I think the fact that the wallet was stolen, it seems to me it gives a greater belief that Simmons would have shot or attempted to murder, because it sounds like, after the wallet was stolen, there was a conflict between these people. So if anything, it almost supports the prosecution's case. But I think that these are wholly distinct events, the stealing of the wallet and then the shooting, and... Well, it depends on what you mean distinct. They may be distinct legally, but obviously they're not distinct in the human narrative. Right. But in other words, but I think it's important for purposes of this case whether or not the due process was violated. I mean, I think it's interesting Kincaid said at his depot, I don't even remember Higazi. Now, who knows if that's... You know, I'm not inclined to believe much Mr. Kincaid says, given what we've got in this record, because we hear from one of the witnesses that Kincaid tells them, well, don't tell anybody that I even talked to you. I mean, he's not the model officer. Definitely not a good fact for me, but I think that it's important to look at, even if Kincaid were added, what would happen then, and what would be the point of adding him, because I don't see... Well, no, no, that was my question to your adversary, of course. You've exceeded your time. Great. Thank you. Okay. Thank you. Just a couple of things. What about the timing point that Ms. Smith... Canada? I'm sorry? I'm sorry, I couldn't hear you. The timing point. Is it correct that the 90 days had already run by the time he got sick? No, because if it was actually February 18th and it was removed November 25th, then it would have been February 25th, I think, or so would be the 90 days. So, you would have let 85 of the 90 days go by then? That's possible, but then again, the issue is whether there was any excuse whatsoever for the set-aside, and I think there is excusable neglect. The District Court did not decide that issue at all. It simply basically ignored it, even though... I mean, good cause and excusable neglect. Is excusable neglect a good cause? Definitely, but I think excusable neglect is a little bit... Oh, you said there's no good cause, and you're saying there's no excusable neglect? I think excusable neglect is a little bit more flexible of a standard, and I think the cases cited in our brief show that you can have not good cause, and they still have to consider whether it was still excusable neglect. One is under Rule 4, and one is under Rule 6, as my last recollection is based on what we've set forth in the briefing. But I think also one has to look at a couple of other things with regards to that issue, that there was no good cause, according to the judge, but there was no analysis whatsoever as to how he arrived at that decision. And so, what was the benefit versus the harm? And I could address the other issue about the five days if I have time, but what was the benefit versus the harm of denying this? So, by denying it, once the summary judgment motion came and that case was gone, there was no harm to the court in allowing service when I renewed the request that I'd be allowed to serve him late, because that would just be the same as if a new case was filed. So, is the docket more important than anything? The timing of the trials? It would no be... The new case couldn't have been filed at that point. No, but I didn't need to file it, because it was already filed against Mr. Kincaid. It wouldn't be just the same as if a new case... So, it would be essentially the same as a new case being removed to the federal court right then. How could that be the resolution or the reason why you deny this issue? And what other prejudice is there to the defense? There was none presented. And what is the prejudice of the plaintiff? No, I mean, for example, your case against Kincaid depended on the truth of Mr. Hergazi's, is that his name, statement that Kincaid told him not to talk to anybody about this. And that was not pertinent at the trial, right? Well, he didn't win on that issue, but that would have been something that the prosecutors could have considered early on. No, but what I'm saying is, so therefore, there would now have to be... Kincaid, with the passage of time and so on, would now have to be able to demonstrate that he says he didn't say that. So, there would have to be a trial or one of the facts that there would have to be witnesses on and evidence on is whether he said this many years before now. We're talking longer than past the limitations period. So, there is certainly an interest in not having things drag out beyond the limitations period, which is really what we're talking about. Of course, Your Honor, but you have to look at any case that goes on appeal. I have another one that's been to the Ninth Circuit twice. Now, the trial's coming up seven years later. I'm in trial in a case that's over five and a half years old in the state court right now that we're off this week. Kincaid was out of the case. He presumably wasn't worrying about that anymore, and now he has to start worrying about it. His deposition was taken during this case. Not about this. Pardon me? Not about this. Well, yes, there were issues asked to him about the Higazi issues. So, he did have his chance to explain. But he didn't Pardon me? He said he never said that? Correct. So, there was a dispute, undoubtedly, and not only... But he actually says he doesn't remember the whole thing. He doesn't know whether he ever talked to the guy at all. That's what he's saying. He's saying, I don't remember anything now. That's what he said at the time of his deposition. So, it's not going to change. And then the other thing about the... I think you've exceeded your time. I'll give you an update. Great, thank you. I wanted to ask one more question, but if I can't, I understand. Thank you both for helpful arguments. The case has been submitted and we are adjourned for the week. All rise. This court for this session stands adjourned.
judges: FLETCHER, BERZON, LEE